IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00037-KLM

RYAN MILLER,

    Plaintiff,

v.

SECURA SUPREME INSURANCE COMPANY, and
SECURA INSURANCE COMPANY,

    Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **[Motion] Regaring [sic] Plaintiff's Intended Calling of Defendant's [sic] Rebuttal Expert, B. Andrew Castro, M.D., in His Case-in-Chief** [#42] (the "Motion"). Plaintiff filed a Response [#48] in opposition to the Motion [#42], and Defendants filed a Reply [#56]. The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#42] is **GRANTED**.[1]

This case relates to Plaintiff's claim for uninsured and underinsured motorist ("UIM") benefits under his automobile insurance policy issued by Defendants. *See Compl.* [#5] ¶¶ 6, 8. Plaintiff was injured in a car accident on October 18, 2018, and Defendants opened a claim on behalf of Plaintiff on October 19, 2018. *Id.* ¶¶ 12, 20.

---

[1] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#12, #13].

- 1 -

Defendants reviewed Plaintiff's medical records relating to the collision and a separate car accident which had occurred in 2017 and sent Plaintiff a check for advance UIM benefits in the amount of $22,426.71. *Id.* ¶¶ 34, 38. In making this payment, Defendants advised Plaintiff that they disputed "the cause and extent of [Plaintiff's] claimed injuries and damages as they relate to the 10/18/18 accident versus the [2017] accident." *Id.* ¶ 34. Plaintiff disputed the amount of UIM benefits he received, asserting that the "UIM [p]ayment was insufficient to cover his injuries, damages and losses sustained as a result of the [c]ollision." *Id.* ¶ 35. Defendants again "disputed the reasonableness and necessity of the medical expenses [Plaintiff] had incurred and [informed Plaintiff] that [while they] had advanced the amount of $22,426.71 as a UIM Settlement Offer,] [they] had no legal or contractual obligation to make an advance payment[.]" *Id.* ¶ 36.

On December 16, 2021, Plaintiff brought this action against Defendants, asserting claims for unlawful delay and denial of UIM benefits under Colo. Rev. Stat. §§ 10-3-1115 and 1116, breach of insurance contract, and bad faith breach of insurance contract. *See Compl.* [#5] ¶¶ 64-89. In the present Motion [#42], Defendants state that Plaintiff has requested that Defendants' counsel provide a subpoena to Defendants' rebuttal expert, B. Andrew Castro ("Castro"), for live testimony in Plaintiff's case-in-chief at the time of trial. *Motion* [#42] at 1. In the Response [#48], Plaintiff appears to concede that he cannot subpoena Dr. Castro for trial but states that he intends to use Dr. Castro's deposition testimony in his case-in-chief. *Response* [#48] at 5.

In the Motion [#42], Defendants state that Dr. Castro is a rebuttal expert whose opinions were disclosed to rebut Plaintiff's experts, including but not limited to Randy James, D.C., and Chad Prusmack, M.D. *Motion* [#42] at 2. Defendants assert that

- 2 -

Plaintiff did not endorse Dr. Castro as an expert in his case, only endorsing Dr. Castro generally as a fact witness in supplemental disclosures.  *Id.*  Defendants aver that Dr. Castro is not a fact witness, but is, rather, Defendants' expert rebuttal witness who specifically rebuts the medical opinions of Plaintiff's experts.  *Id.*  Defendants argue that, because Dr. Castro's opinions specifically rebut Plaintiff's experts' opinions, there is no probative value to compelling Dr. Castro to testify in Plaintiff's case-in-chief, and, even if there were, any opinions of Dr. Castro would be cumulative of the subject matter of Plaintiff's experts, thereby prejudicing Defendants.  *Id.*

Defendants rely heavily on *Rubel v. Eli Lilly and Company*, 160 F.R.D. 458, 460 (S.D.N.Y. 1995), which the Court finds persuasive.  *Motion* [#42] at 2-3; *Reply* [#56] at 3.  In *Rubel*, the Southern District of New York discussed four considerations regarding whether to allow one side to call an expert witness consulted by the opposing side.  The second and fourth considerations are applicable here:

> First, there is a[n] important interest in allowing counsel to obtain the expert advice they need in order properly to evaluate and present their clients' positions without fear that every consultation with an expert may yield grist for the adversary's mill.  This policy underlies FED.R.CIV.P. 26(b)(4)(B)'s severe limitation on the discovery of consultative, as opposed to testifying, experts.  Where, as here, the party who consulted the expert in question has allowed discovery without objection, the policy has little or no application.  *See, e.g.*, *Steele v. Seglie*, No. 84-2200, 1986 WL 30765, at *4 (D. Kan. Mar. 27, 1986).
>
> Second, the Federal Rules of Civil Procedure reflect a view that it would be unfair to allow a party to benefit from the effort and expense incurred by the other in preparing its case.  *See, e.g.*, *Ager v. Jane C. Stormont Hosp.*, 622 F.2d 496, 502 (10th Cir. 1980).  In other words, the general policy, which is not without exceptions, is that each side should prepare its own case at its own expense.
>
> Third, there are concerns peculiar to the issue of compelled testimony from nontestifying experts.  Some have suggested that allowing the use of compulsion might diminish the willingness of experts to serve as consultants

>and, in any case, that it is unfair to the experts. *See, e.g.*, *Kaufman v. Edelstein*, 539 F.2d 811, 821-22 (2d Cir. 1976); *Healy v. Counts,* 100 F.R.D. 493, 497 (D. Colo. Jan. 30, 1984); *People ex rel. Kraushaar Bros. & Co. v. Thorpe*, 296 N.Y. 223, 72 N.E.2d 165 (1947); Note, *Must the Show Go On? Defining When One Party May Call or Compel An Opposing Party's Consultative Expert to Testify*, 78 MINN. L. REV. 1191, 1197-98 (1994). Where, as here, the expert agreed to consult on the case, the concern is diminished. *See, e.g.*, *Gilly v. City of New York*, 508 N.E.2d 901, 901-02 (N.Y. Ct. App. Apr. 30, 1987).
>
>Fourth, and perhaps most pertinent, permitting one party to call an expert previously retained or consulted by the other side entails a risk of very substantial prejudice stemming from the fact of the prior retention, quite apart from the substance of the testimony. One leading commentator aptly has characterized the fact of the prior retention by the adversary as "explosive." 8 C. WRIGHT, A. MILLER & R. MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2032, at 447 (1994).

160 F.R.D. at 460. A number of other courts have approvingly cited the *Rubel* considerations in ruling on similar or related matters. *See, e.g.*, *Vazirabadi v. Denver Health*, No. 17-cv-01737-RBJ, 2018 WL 8963446, at *4 n.2 (D. Colo. June 28, 2018); *Kurlander v. Kroenke Arena Co., LLC*, No. 16-cv-02754-WYD-NYW, 2017 WL 3084473, at *3 (D. Colo. July 20, 2017); *Sovde by & through Kinney v. Scott*, 410 P.3d 778, 784 (Colo. Ct. App. 2017).

Plaintiff asserts that "[t]he cases cited by Defendant in its Trial Brief are not applicable because they relate to experts who were retained as consultants by one party but not endorsed to testify at trial." *Response* [#48] at 5. Nevertheless, Plaintiff cites no legal authority regarding why the second and fourth *Rubel* considerations do not apply equally to the circumstances of this case. Plaintiff also offers no alternative legal authority for the Court's consideration.

Plaintiff has failed to offer any reason why the information he intends to obtain from Dr. Castro *must* be presented in his case-in-chief. For example, if Dr. Castro's testimony

were critical to establishing some element of Plaintiff's prima facie case, without which Plaintiff would fail to present sufficient evidence on his claim(s) for the jury's consideration, the Court might be more inclined to allow him to call Dr. Castro in his case-in-chief. However, Plaintiff's purported reason for falling Dr. Castro in his case-in-chief is simply to undermine Dr. Castro's expert opinion. *See, e.g.*, *Response* [#48] at 3 (stating that Plaintiff intends "to discuss the facts surrounding [Dr. Castro's] failure to review all of the medical records that he was provided and whether Defendant Secura ever inquired about that failure"). Allowing Plaintiff to attack Dr. Castro's opinion before Defendants have even offered that opinion is inappropriate. Rather, Plaintiff's proffer of information he intends to elicit from Dr. Castro is classic cross-examination material. *See id.* Thus, having carefully considered the briefs and the considerations raised in *Rubel*, the Court finds that Plaintiff should be barred from calling Dr. Castro as part of his case-in-chief. *See, e.g.*, *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984) (noting that Rule 26 is designed to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation, and holding that, in the absence of "the necessary showing of special need" for the plaintiffs' expert witness, and given that another expert was presented by the defendants on the same subject, "the trial judge acted within his discretion" in barring the defendants from calling the plaintiffs' expert witness at trial, even where the plaintiffs themselves had decided not to call that expert).

Accordingly,

IT IS HEREBY **ORDERED** that the Motion [#42] is **GRANTED**. Plaintiff may not call Dr. Castro as part of Plaintiff's case-in-chief, either through live testimony or deposition testimony.

DATED: July 13, 2023

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge